BECKER, Judge.
Plaintiff/appellant newsmen, Richard Angelico, Ronald Ridenhour and Clancy DuBos, seek review of the trial court’s granting of an exception of lack of jurisdiction filed by defendants/appellees New Orleans District Attorney Harry F. Connick and Orleans Parish Criminal District Court Judge Leon A. Cannizzaro. The only issue on appeal is whether the Civil District Court has jurisdiction to issue a writ of mandamus ordering the defendants to release a report prepared by a special grand jury convened in relation to the New Orleans city sales tax investigation. However, because of judicial economy and the interest of the public, we will also make a determination whether the report falls within the scope of the Public Records Act. LSA-R.S. 44:1 et seq.
FACTS
A special grand jury was convened in March of 1987 in connection with the New Orleans Parish District Attorney Office’s investigation of suspected irregularities in the sales tax collections in the City of New Orleans. The plaintiffs allege that on September 7, 1988, in anticipation of its discharge, the special grand jury presented a 13-page report concerning the investigation to Judge Cannizzaro. That report, which was reportedly critical of the district attorney’s office’s handling of the investigation, was then reviewed and revised by Assistant District Attorneys Bridget Bane and Kevin Boshea. On September 8, 1988, a five-page report was presented to the jury foreman to sign. When this final report was presented for Judge Cannizzaro’s signature on September 12, 1988, the district attorney’s office requested an order suppressing the report based on La.C.Cr.P. arts. 434 and 444, which provide for secrecy of grand jury proceedings and delineate the duties of grand juries. The motion to quash was granted, based on Judge Canniz-zaro’s finding that the special grand jury had exceeded its authority in preparing the report. On September 17, 1988, Judge Cannizzaro held a rehearing on the motion to quash at the request of “Save Our Wetlands,” an intervenor. After hearing argu *1066 ment, Judge Cannizzaro again concluded that the court was without authority to release the report.
Two of the plaintiff newsmen, Ridenhour and DuBos, and their employers made written demand dated September 16, 1988, upon District Attorney Connick that he make the reports public. They argued that the reports constituted “public records” under LSA-R.S. 44:1 et seq., the Public Records Act. Those requests were denied by Connick in writing dated September 22, 1988, based upon the provisions of La.C.Cr.P. arts. 434 and 444. Additionally, District Attorney Connick stated that his office was not in possession of the reports and that he was not the custodian of those reports. The newsmen also made the same demand upon Judge Cannizzaro, who denied their requests by letter dated October 3, 1988, on the basis that the reports do not constitute “public records” under the applicable statutes.
Thereafter, on October 12, 1988, the plaintiff newsmen filed a Petition for Writ of Mandamus in the Civil District Court, seeking issuance of a writ ordering District Attorney Connick and Judge Cannizzaro, as custodians of the reports, to make the reports available to the public. Connick filed an exception to the jurisdiction of the court and an exception of no cause of action, which Judge Cannizzaro joined in asserting. The court considered only the exception to jurisdiction, which was granted on November 7, 1988, based on the judge’s holding that he had no jurisdiction to review Judge Cannizzaro’s prior order suppressing the reports.
JURISDICTION
The Public Records Act provides, in pertinent part, as follows:
R.S. 44:31 Right to examine records
Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record.
R.S. 44:32 Duty to permit examination
[[Image here]]
A. The custodian shall present any public record to any person of the age of majority who so requests ...
R.S. 44:35 Enforcement
A. Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either by a final determination of the custodian or by the passage of five days ... from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney’s fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.
The Public Records Act specifically provides for jurisdiction to seek a writ of mandamus in the district court of the parish in which the custodian’s office is located. LSA-R.S. 44:35.
However, the unique division of the court system found in Orleans Parish is the source of confusion in situations such as the present case. The district courts in every parish except for Orleans are vested with both civil and criminal jurisdiction, while Orleans Parish has a split criminal and civil system. LSA-R.S. 13:1137 and LSA-R.S. 13:1336, in pertinent part provide:
R.S. 13:1137 Civil District Court for the Parish of Orleans; jurisdiction
A. The Civil District Court for the Parish of Orleans has the same jurisdic *1067 tion as the district courts throughout the state, except as otherwise provided by law.
R.S. 13:1336 Criminal District Court for the parish of Orleans; jurisdiction; powers.
A. The Criminal District Court for the Parish of Orleans shall have exclusive jurisdiction of the trial and punishment of all crimes, misdemeanors, and offenses committed within the Parish of Orleans if the jurisdiction is not vested by the law in some other court.
The question as to jurisdiction, in Orleans Parish, therefore becomes whether or not the matter at issue is characterized as criminal or civil in nature. In the instant case, the District Attorney requested the impaneling of a special grand jury as provided for by La.C.Cr. art. 415.1 for the purpose of conducting, among other things, an investigation of suspected improprieties in the sales tax collections in the City of New Orleans, possibly criminal violations. Judge Leon Cannizzaro was the judge who impaneled the special grand jury, which was under his control and instructions, at least to the extent of requiring them to observe and obey the law. Any action taken by the jury must be reported to the presiding judge. C.Cr.P. art. 401 et seq. They did so by filing this report to him in open court. Judge Cannizzaro, after reviewing the report, found that its issuance was beyond the legal authority of the jury as set forth in La.C.Cr.P. art. 444 and LSA-R.S. 15:121. He further found, after request by plaintiffs, that the report, being issued illegally, was not a public record. There can be no doubt that a report from a criminal grand jury duly impaneled and presided over by a Criminal District Judge is criminal in nature and under the jurisdiction of the Criminal District Court.
It is well settled that a judge of the Civil District Court has no jurisdiction over a judge of the Criminal District Court while he is acting in his official capacity. As was stated in Maryland National Insurance Co. v. Garrison, 233 So.2d 32 (La.App. 4th Cir.1970), writ refused, 256 La. 251, 236 So.2d 30 (1970).
“... we still view as absolutely intolerable that one court having neither appellate, nor supervisory jurisdiction over a second court, should attempt to interfere by an injunction against the second court with that court’s operation of what it deems, rightly or wrongly, to be its business.”
“If the Civil District Court can enjoin the Criminal District Court, perhaps the Criminal District Court could imprison the Civil District Judge for contempt or conspiracy.” Also see Connick v. Ward, 351 So.2d 250 (La.App. 4th Cir.1977); State v. Julian, 438 So.2d 590 (La.App. 4th Cir.1983).
We therefore conclude that the trial court’s action in refusing to accept jurisdiction over Judge Leon Cannizzaro was correct since any order issued by that trial judge would have been meaningless.
The proper method in these particular and peculiar circumstances would have been for plaintiffs, once Judge Cannizzaro refused their request on the ground that the report was not a public record, to seek supervisory writs to this court. In State v. Platt, 193 La. 928, 192 So. 659 (1939) two grand jurors were held in contempt of court for reading aloud in court a report critical of the District Attorney after the judge told them the report had to be kept secret. The court observed:
“If the District Judge had illegally ruled that the document could not be read or filed, his action in that respect would have been subject to review by the tribunal of superior jurisdiction in an orderly manner.” 192 So. at page 672.
Although the Public Records Act was first enacted by Art. 195 of 1940 after the Platt decision, we do not believe it was the intent of the legislature to upset the statutory scheme for the functioning of the grand jury under the supervision of the district judge who empaneled the jury and the normal procedure for the review of the trial court’s decisions by a superior court.
We disagree that the trial judge did not have jurisdiction of District Attorney Con-nick, for the district attorney is not in the same position as a judge and if he was the *1068 custodian of a report which was legally a public record, he could be ordered to produce it as per the Public Records Act. However, because we have assumed the responsibility of determining whether or not the jury report is or is not a public record, we find the trial court’s ruling as to Mr. Connick moot.
PUBLIC RECORDS
The Public Records Law, LSA-R.S. 44:1 et seq., provides that certain types of documents are public records except as otherwise provided in that chapter or as otherwise specifically provided by law. The Code of Criminal Procedure article 444 provides:
“A. A grand jury shall have the power to act, concerning a matter, only in one of the following ways:
(1) By returning a true bill
(2) By returning not a true bill
(3) By pretermitting entirely the matter investigated.
The grand jury is an accusatory body and not a censor of public morals. It shall make no report or recommendation, other than to report its action as aforesaid.
C. A grand jury may make such reports or request as are authorized by law.”
A regular grand jury is required to inspect prisons, places of detention, asylums and hospitals within the Parish and make a report to the District Judge on those institutions. LSA-R.S. 15:121. There are no other reports which are authorized by law to be made by a grand jury. Further, members of a grand jury, all other persons present at a grand jury meeting and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of all witnesses and all other matters occurring at, or directly connected with, a meeting of a grand jury. C.Cr.P. 434 (emphasis added).
As was so succinctly stated by our legislature, the function of a grand jury is solely for the purpose of criminal investigation and it is not a body to censor the public morals. After an extensive review of all the statutes concerning the grand jury which preceded those presently incorporated in Title XII of the Code of Criminal Procedure, the Court in State v. Platt, (supra) stated:
“Returning now to the law of our own state, the document which Powell and DeArmas, as grand jurors, tried to read without the court’s permission, certainly censured the District Attorney and his staff and charged them with incompetency, favoritism and misconduct in office, ie. malfeasances and nonfeasance and they were deprived of an opportunity to defend their professional and personal reputations and good names.
.... However we reiterate that the duties of the grand jurors and their power and authority have been restricted by articles 206, 210 and 211 of the Code of Criminal Procedure of Louisiana and section 42, Article VII of the Constitution of 1921,[1] and therefore, the document titled “Request to the Honorable Judge Platt for Assistance” was a type of finding, report or return which the grand jury was without authority and power to present to the court.” 192 So. at 679.
We have reviewed the “report” issued to Judge Cannizzaro and find that it contains no information or evidence which would lead to any type of prosecutorial action. It was not an indictment, nor a non-indictment and therefore was not conducted, transacted or performed by or under the authority of the Constitution or laws of this state and as such is not a public record.
The ruling of the trial court is therefore affirmed.
AFFIRMED.
PLOTKIN, J., dissents with reasons.

. Now C.Cr.P. arts. 413, 414, 435, 444; and LSA-R.S. 15:121.